**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LUIS ALBERTO REYES-ORTIZ, : | Civil No.: 08-6386 (JEI) |
| Petitioner, : |  |
| v. : | **O P I N I O N** |
| PAUL SCHULTZ, Warden, : |  |
| Respondent. : |  |

**APPEARANCES:**

Luis Alberto Reyes-Ortiz, Pro Se
28379-050
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

Elizabeth A. Pascal
Assistant U.S. Attorney
Office of the U.S. Attorney
401 Market Street, 4th Fl.
Camden, NJ 08101
Attorney for Respondent

**IRENAS, District Judge**

Petitioner, Luis Alberto Reyes-Ortiz, a federal prisoner confined at the Federal Correctional Institution, Fairton, New Jersey, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Federal Bureau of Prisons' calculation of credit against the custodial sentence he is currently serving. The named respondent is Warden Paul Schultz. This Court has reviewed all submissions by the parties, and for the reasons stated below, the Court will grant the petition.

## BACKGROUND

The following background information is taken from the petition, response, traverse, and supplemental information provided by Respondent.

Petitioner is a federal prisoner serving a sentence for reentry of an illegal alien after deportation. He challenges the Bureau of Prisons' ("BOP") calculation of his credit.

After being deported to Mexico on May 2, 2006, Petitioner reentered the United States on an unknown date. On October 31, 2006, Petitioner's infant child was involved in a motor vehicle accident with the child's mother, who was suspected of driving while intoxicated. Petitioner arrived at the hospital, along with the child's maternal grandmother and aunt. A representative from the New Jersey Division of Youth and Family Services was called into the hospital to determine who would take custody of the baby for the night. A background check was conducted on Petitioner, as well as the grandmother and aunt. The background check on Petitioner revealed that Petitioner had a $500 warrant out of Paramus and a no bail warrant out of Immigration and Customs Enforcement ("ICE"). Petitioner was placed under arrest for the active warrants, and ICE issued an immigration detainer. On November 1, 2006, an ICE officer provided Petitioner notice of

ICE's intention to deport him and placed him in ICE's custody. Petitioner remained in custody pending an ICE investigation.[1]

On December 4, 2006, Petitioner was again ordered deported. The next day, December 5, 2006, Petitioner was released to the United States Marshals for criminal prosecution for the illegal reentry. He pled guilty on June 22, 2007, and was sentenced on October 12, 2007 to serve 41 months imprisonment. Thus, his criminal sentence began on October 12, 2007.

The BOP granted Petitioner prior custody credit from December 4, 2006, the day he was ordered deported, but then continued to be held for criminal prosecution, until October 11, 2007, the day before his sentencing. Petitioner did not receive credit for the time between November 1, 2006 through December 3, 2006. In this petition, Petitioner seeks credit for this time period (November 1, 2006 through December 3, 2006).

Petitioner argues that the time he spent in custody pending removal proceedings constitutes "official detention," pursuant to 18 U.S.C. § 3585(b), for which prior custody credit is awarded. Respondent argues that the time spent in the custody of ICE awaiting a removal determination is excluded from the definition of "official detention," and that the BOP's calculation of Petitioner's credit is correct in that Petitioner is not entitled

---

[1] See United States v. Reyes-Ortiz, 07-cr-0530 (JEI)(docket entry 1, p. 2).

to credit for the time period of November 1, 2006 through December 3, 2006.

## ANALYSIS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989). Because Petitioner is proceeding pro se in his application for habeas relief, the Court will accord his petition the liberal construction intended for pro se litigants.

### A.   Jurisdiction

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless-... He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3).

"Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485-486 (3d Cir. 2001). A petition for a writ of habeas corpus under 28 U.S.C. § 2241 in

4

the district where the prisoner is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence." Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976)(challenging erroneous computation of release date). See also Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973)(where petitioner alleged a claim for credit for time served prior to federal sentencing).

Accordingly, this Court has subject matter jurisdiction under § 2241 to consider this matter since Petitioner does not challenge the imposition of the sentence, but instead challenges the execution of the sentence, and because Petitioner was confined in New Jersey at the time he filed his petition. See Vega v. United States, 493 F.3d 310, 313 (3d Cir. 2007)(challenge to BOP's failure to give credit for time served prior to federal sentencing is cognizable under § 2241); see also Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991)(challenge to BOP's refusal to decide whether to designate state prison as a place of federal confinement); 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 41.2b (3d ed. 1998).

**B.    Exhaustion**

It is well-settled that, although the exhaustion requirement is not jurisdictional but that of prudence of comity, the requirement is diligently enforced by the federal courts. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-62 (3d

5

Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241").

In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007).  An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  See 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where she is confined.  See id. at § 542.14(a).  If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and then, if still dissatisfied, to the Central Office of the Bureau of Prisons.  See id. at §§ 542.15(a) and 542.18.  No administrative appeal is considered finally exhausted until a

6

decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008).

> The exhaustion doctrine promotes a number of goals:
>
> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In this case, Petitioner filed an Administrative Remedy Request with the warden seeking the prior credit on April 24, 2008. The request was denied. On May 22, 2008, Petitioner filed a Regional Administrative Remedy Appeal, which was denied on June

7

16, 2008. On July 9, 2008, Petitioner appealed the Regional Director's decision, but mistakenly filed it on the wrong level. On August 14, 2008, Petitioner filed the appeal on the correct level, the Central Office, but submitted the wrong form. His appeal was rejected with directions to resubmit on the correct form, which Petitioner did not do.

Respondent argues that the petition should be dismissed for failure to exhaust administrative remedies, since Petitioner did not receive the benefit of a decision on the merits from the Central Office. Petitioner, in his Traverse (docket entry 7), argues that his petition should be decided on the merits because it is an issue of statutory construction only. Furthermore, Petitioner notes that during the course of his administrative remedies, he was housed in the Special Housing Unit ("SHU") at FCI Fairton for a disciplinary infraction. In the SHU, Petitioner, whose knowledge of the English language is "limited," was not provided any assistance with interpreting and was "in essence, left to fend for himself."

The Court of Appeals for the Third Circuit has held, "[i]f a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either 'excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court.'" Ridley v. Smith, 179 Fed.

App'x 109, 111, 2006 WL 1168780 at * 2 (3d Cir. 2006)(quoting Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), abrogated in part on other grounds by Reno v. Koray, 515 U.S. 50 (1995) and citing Greene v. Meese, 875 F.2d 639, 643 (7th Cir. 1989) (explaining that exhaustion of administrative remedies is not a jurisdictional prerequisite)).

In this case, this Court finds that, despite Petitioner's issues with exhaustion, his claims do warrant habeas relief, and therefore, will excuse the faulty exhaustion.

**C.   The Petition Must Be Granted.**

Title 18 of the United States Code, section 3585(b), states:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
> 
> > (1) as a result of the offense for which the sentence was imposed; or
> > 
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> 
> that has not been credited against another sentence.

The definition of "official detention" is provided in BOP Program Statement 5880.28.  With regard to the time Petitioner spent in ICE custody prior to being ordered removed, the Program Statement explains:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252

> pending a final determination of deportability. An inmate being held <u>by INS pending a civil deportation determination is not being held in "official detention" pending criminal charges.</u>

<u>See</u> BOP P.S. 5880.28 p. 1-15A, Respondent's Declaration of Farrow at Exhibit 6 (emphasis in original)(internal citations omitted).

In this case, the record supplied by Respondent demonstrates that, as of November 1, 2006, Petitioner was being held because he had illegally reentered the United States. This is evidenced by Exhibit C to the Declaration of David Fern ("Fern Decl."), submitted by Respondent, of the Notice of Intent/Decision to Reinstate Prior Order. In that Notice, which is dated November 1, 2006, the day Petitioner was taken into ICE custody, it was determined that Petitioner was previously removed, and illegally reentered the United States. Officer Fern states in his declaration that he had to confirm administrative tasks, such as comparing Petitioner's fingerprints to the fingerprints on file, and making sure that Petitioner had not reentered the country legally; however, Officer Fern noted that: "[I]f the information produced from my investigation proved that Mr. Reyes-Ortiz illegally re-entered the Untied States, then I intended to present the case for prosecution." (Fern Decl., ¶ 6).[2]

Thus, it is apparent to this Court that ICE intended to

---

[2] Officer Fern's fingerprint request, dated November 3, 2006, further confirms that Petitioner was held pending prosecution. The request states that "we . . . will be presenting [Petitioner] for criminal prosecution." (Fern Decl., Ex. D).

prosecute Petitioner as of November 1, 2006, when the Notice of Intent (Fern Decl., Ex. C) was issued determining that Petitioner had illegally re-entered the United States.  Petitioner was not being held with the clear intent to deport; rather, he was being held to investigate the potential prosecution.

In Galan-Paredes v. Hogsten, 2007 WL 30329 (M.D. Pa. Jan. 3, 2007), the Middle District of Pennsylvania was faced with a similar case to the one here.  In Galan-Paredes, the court held that "not all of the time spent in ICE custody is necessarily spent 'pending a final determination of deportability.'" Id. at *3 (quoting Guante v. Pugh, 2005 WL 3867597 at *2 (S.D. Ga. Dec. 2, 2005)).  As explained by Respondent in the case before this Court:

> the court [in Galan-Paredes] found that when the government "shift[s] from holding Petitioner for removal proceedings to holding him for criminal proceedings," prior custody credit should accrew. Id. The court noted that when Galan-Paredes admitted to the illegal re-entry, the government may have determined at that point to prosecute him. See id. at *3.  The court ordered Respondent to supplement the record with information regarding when the government decided that Galan-Paredes' case was appropriate for criminal prosecution. See id. at *4.

Respondent's letter brief at pp. 3-4 (citing Galan-Paredes v. Hogsten, 2007 WL 30329 (M.D. Pa. Jan. 3, 2007)).

In the case before this Court, the Notice of Intent, Fern Decl., Exhibit C, dated November 1, 2006, evidences that Petitioner had illegally re-entered the country.  It follows that

11

Officer Fern, who "intended to present the case for prosecution" decided on that day that the case was appropriate for criminal prosecution.  While there may have been some housekeeping issues to attend to, this Court finds that it was on November 1, 2006, that the government was aware of and intending to prosecute the illegal reentry.

    Here, a review of the record demonstrates that Petitioner has not been given proper credit, and that the BOP's exclusion of credit for the time Petitioner spent in ICE custody pending the outcome of his removal proceedings was improper.  Thus, Petitioner's request for habeas relief will be granted.  The Bureau of Prisons will be directed to award Petitioner credit for the time spent in custody from November 1, 2006 through December 3, 2006.

## **CONCLUSION**

    Based on the foregoing, the Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, will be granted.  An appropriate Order accompanies this Opinion.


                                         s/ Joseph E. Irenas
                                        JOSEPH E. IRENAS
                                        United States District Judge

Dated:  December 1, 2009